IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| WINSTON WESLEY NOLES, | § | |
| | § | |
| PLAINTIFF, | § | |
| | § | |
| v. | § | CIVIL CASE NO. 3:20-CV-3677-N-BK |
| | § | |
| NICK DIAL, POLICE OFFICER, | § | |
| ROYSE CITY TX, IN HIS | § | |
| INDIVIDUAL CAPACITY AND KEITH | § | |
| SHORT, POLICE OFFICER, ROYSE | § | |
| CITY TX, IN HIS INDIVIDUAL | § | |
| CAPACITY, | § | |
| | § | |
| DEFENDANTS. | § | |

FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to 28 U.S.C. § 636(b) and *Special Order 3*, now before the Court for findings and a recommended disposition are Defendants' motions to dismiss the original complaint. Doc. 10; Doc. 16. The motions should be **GRANTED IN PART**.

## I. PROCEDURAL HISTORY

On December 18, 2020, the *pro se* Plaintiff filed this action against Defendant police officers ("Officer Dial" and "Officer Short," collectively "Defendants") in their individual capacities pursuant to 42 U.S.C. § 1983. He alleged that one or both Defendants violated his First, Fourth, and Fourteenth Amendment rights when they searched and seized his property without probable cause, violently arrested him, and detained him for engaging in protected political speech, namely holding placards–-some of which contained curse words–-by the side of

a public highway.[1]  Doc. 3 at 3-12.  Defendants filed essentially identical motions to dismiss, Plaintiff has responded, and the motions are now ripe for disposition.

## II. APPLICABLE LAW

A plaintiff fails to state a claim for relief under Rule 12(b)(6) when the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007).  In order to overcome a Rule 12(b)(6) motion, a plaintiff's complaint should "contain either direct allegations on every material point necessary to sustain a recovery . . . or contain allegations from which an inference may fairly be drawn that evidence on these material points will be introduced at trial." *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995) (quotation omitted).  The complaint should not simply contain conclusory allegations but must be pled with a certain level of factual specificity, and the district court cannot "accept as true conclusory allegations or unwarranted deductions of fact." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (quotation omitted).

Section 1983 "provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994).  To state a claim under section 1983, Plaintiff must allege facts that show that he has been deprived of a right secured by the Constitution and the laws of the United States, and the defendants were acting under color of state law.  *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978).

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional

---

[1] Additional factual allegations from Plaintiff's complaint are set forth *infra* in Section III.C.

rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citation omitted).  The qualified immunity inquiry involves two prongs that the Court must answer affirmatively before an official is subject to liability: (1) whether the facts that a plaintiff has alleged make out a violation of a constitutional right, and (2) whether the right at issue was "clearly established" at the time of defendant's alleged misconduct.  *Id.* at 232.  A court may begin its assessment with either prong.  *Id.* at 236 (*overruling in part Saucier v. Katz,* 533 U.S. 194 (2001)).  When a qualified immunity defense is raised in a motion to dismiss, "it is the defendant's conduct *as alleged in the complaint* that is scrutinized for 'objective legal reasonableness.'" *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996) (emphasis in original).

## III. ANALYSIS

Defendants assert qualified immunity and argue that the constitutional rights Plaintiff invokes were neither clearly established at the time of the incident in question nor were Defendants' actions objectively unreasonable.[2]  Doc. 11 at 5-8; Doc. 17 at 4-9.  Defendants additionally assert that Plaintiff's claims are barred by the statute of limitations and the doctrine of res judicata.  Doc. 11 at 8-9; Doc. 17 at 9-10.

As an initial matter, Plaintiff's response brief makes no mention of his Fourth and Fourteenth Amendment claims.  Thus, he has apparently abandoned them.  *See Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 (5th Cir. 2006) (holding that plaintiff's failure to defend claim in response to defendant's motion to dismiss constituted abandonment).  Instead, Plaintiff focuses on his First Amendment claim, asserting that, despite his roadside display of provocative messages and profanity, his conduct was protected by clearly established law of which any

---

[2] Defendants also argue that Plaintiff's allegations are not specifically pled separately as to each of them, but a review of Plaintiff's complaint does not support that contention.

reasonable officer should have known. Doc. 24 at 1-3. Separately, Plaintiff contends that his filming of Defendants was protected by the First Amendment. Doc. 24 at 3-4. Finally, Plaintiff argues that (1) his case is not barred by res judicata because his earlier case was dismissed without prejudice and (2) the Court should decline to dismiss this action as time-barred.[3] Doc. 24 at 4-5. Plaintiff alternatively requests leave to amend his complaint if the Court finds that dismissal is warranted. Doc. 24 at 1.

### A. Res Judicata

Application of the doctrine of res judicata requires that: (1) the parties were identical in the two actions or the non-party's interests were adequately represented by a party to the prior action; (2) the prior judgment was rendered by a court of competent jurisdiction; (3) there was a final judgment on the merits; and (4) the same cause of action was involved in both cases. *Eubanks v. F.D.I.C.*, 977 F.2d 166, 169-70 (5th Cir. 1992) (citing *Nilsen v. City of Moss Point*, 701 F.2d 556, 559 (5th Cir. 1983) (en banc)). Here, Defendants' argument fails because the prior judgment they refer to dismissed Plaintiff's case without prejudice. *See Noles v. Short*, No. 3:20-CV-1721-M-BT at Doc. #13 (Judgment stating "IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that Plaintiff Winston Wesley Noles's case is DISMISSED without prejudice under Federal Rule of Civil Procedure 41(b) for failure to comply with the Court's order.") (N.D. Tex. Oct. 22, 2020) (Lynn, C.J.). Thus, there is no prior final judgment on the merits that could bar Plaintiff's claims.

---

[3] While Plaintiff also asserts that Defendants wrongly invoked *Heck v. Humphrey*, 512 U.S. 477 (1994) in an attempt to bar his claims, Doc. 24 at 5, Defendants' motions and supporting briefs make no mention of that case or doctrine.

### B. Statute of Limitations

Section 1983 does not have a specified statute of limitations, so federal courts borrow the general personal injury limitations period from the state in which they sit. *Owens v. Okure*, 488 U.S. 235, 239, 240-41 (1989). In Texas, the personal injury statute of limitations is two years. *Slack v. Carpenter*, 7 F.3d 418, 419 (5th Cir. 1993). Although federal courts look to state law to determine the limitations period, "federal law governs when a cause of action under § 1983 accrues . . . [i.e.] when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Gatrell v. Gaylor*, 981 F.2d 254, 257 (5th Cir. 1993). "A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred, and the pleadings fail to raise some basis for tolling or the like." *Jones v. Alcoa*, 339 F.3d 359, 366 (5th Cir. 2003).

Here, Plaintiff knew his alleged injuries on the date of the event. In his complaint, however, Plaintiff variously lists that date as (1) "2018 DEC 15," Doc. 3 at 5; (2) "2018 DEC 18," Doc. 3 at 11-12, 15, 19, 22, 24, 32, 36, 38, 41, 45, 48; and (3) "2018 DEC 16," Doc. 3 at 28. Plaintiff filed his complaint on December 18, 2020, which would render this action timely if the events in question occurred on December 18, 2018, but no earlier. Because it is not evident from the face of Plaintiff's complaint that this action is time-barred, dismissal of the case on this basis is not permissible. *Alcoa*, 339 F.3d at 366.

### C. Qualified Immunity

#### 1. Additional Factual Background

In his complaint, the allegations of which this Court must accept as true, Plaintiff avers the following: On the day of the incident in question, he was standing near a public highway, video recording himself holding up three signs while periodically swapping between them. Doc. 3 at 5-

6.  Plaintiff's signs read: (1) WELL . . . THE SYSTEM ISN'T GONNA FUCK ITSELF . . ."; (2) "SHIT IS FUCKED UP AND STUFF"; (3) "GIVE ME LIBERTY OR GIVE ME DEATH"; and (4) "FREE FOOD: POTATOES AND CARROTS," which was written on the back of one of the signs.[4]  Doc. 3 at 5, 12.

Approximately 15 minutes into Plaintiff's "peaceful demonstration," Officer Dial arrived at the scene and approached him, having been dispatched due to a complaint of a man holding a sign, namely the second sign quoted above.  Doc. 3 at 6-7.  Officer Short and another officer also were dispatched and arrived on the scene.  Doc. 3 at 7.  Defendants laughed about the sign, but Officer Dial subsequently attempted to coerce Plaintiff to consent to a search of his other signs, which Plaintiff refused, at which point Officer Dial attempted to forcibly seize the signs over Plaintiff's objections.  Doc. 3 at 7-8.  When Plaintiff invoked his Fourth Amendment rights, Officer Dial became angry and punched the signs out of Plaintiff's hands onto the ground.  Doc. 3 at 8.  In the meantime, Officer Short examined Plaintiff's video recording screen, then turned Plaintiff's tripod-mounted camera 90 degrees away from the scene, thereby preventing Plaintiff from collecting content, including evidence of police misconduct and brutality, and as a means to punish Plaintiff for his speech.  Doc. 3 at 13-16.  Officer Dial subsequently arrested Plaintiff.  Doc. 3 at 26-27.

Plaintiff contends Officer Dial "baited the plaintiffs [sic] free speech demonstration by violently punching with a closed fist a peaceful protester and seizing from the plaintiff's possession political placards with messages critical of 'The System.'"  Doc. 3 at 9.  Plaintiff asserts he is a syndicated journalist known for broadcasting and/or publishing content about

---

[4] Pictures of the signs can be found on page 5 of the complaint.  Plaintiff alleges that the incident also was captured on Defendants' dash-mounted cameras.  Doc. 3 at 7.

police abuse and government corruption. Doc. 3 at 9. He alleges that Officer Dial's attempt to suppress his speech was motivated by a desire to punish Plaintiff for his speech critical of government misconduct, and "[t]he fear of being subjected to police brutality would chill a person of ordinary firmness from engaging in similar protected speech conduct." Doc. 3 at 11-13.

Plaintiff further alleges that Officer Dial's taking his signs and recording device and arresting him constituted "content viewpoint censorship" and retaliation for his viewpoint and speech, both in violation of the First Amendment. Doc. 3 at 3-4; Doc. 3 at 30-32, 35. As for Officer Short, Plaintiff contends that his actions constituted a prior restraint, "recording interference," a violation of his right to petition the government for redress of his grievances, and retaliation for Plaintiff recording acts Officer Short knew had the potential to be used as evidence against him and his fellow officers. Doc. 3 at 36-39, 43-47. The Court will address each claim in turn.

   2. *First Amendment*

The First Amendment of the United States Constitution protects an individual's right to freedom of expression through speech and public assembly. *Virginia v. Black,* 538 U.S. 343, 358 (2003). This constitutional guarantee prohibits the government from punishing the use of language that is not within "narrowly limited classes of speech." *Chaplinsky v. New Hampshire*, 315 U.S. 568, 571 (1942); *see United States v. Alvarez*, 567 U.S. 709, 717 (2012) (noting that content-based restrictions on speech generally have been confined to a few "historic and traditional categories of expression long familiar to the bar," including obscenity, defamation, speech integral to criminal conduct, so-called "fighting words," child pornography, fraud, true threats, and speech presenting a grave and imminent threat the government has the power to prevent). At issue in this case is the

"fighting words" category – namely "those which by their very utterance inflict injury or tend to incite an immediate breach of the peace." *Chaplinsky*, 315 U.S. at 572.

    (i)  Officer Dial

It has long been held that even vulgar or profane language, such as that involved here, is protected unless it amounts to "fighting words." *Wiegand v. Seaver*, 504 F.2d 303, 306 (5th Cir. 1974) (quoting *Chaplinsky*, 315 U.S. at 572). For example, in 1971, the Supreme Court overturned the conviction of a defendant for disturbing the peace "by offensive conduct" after he walked through a courthouse wearing a jacket bearing the words "Fuck the Draft." *Cohen v. California*, 403 U.S. 15, 20, 26 (1971). The court held that, without a more specific and compelling reason, the conviction could not be upheld because the phrase did not constitute "fighting words" under the circumstances. *See id*. at 26 ("[A]bsent a more particularized and compelling reason for its actions, a State may not, consistently with the First and Fourteenth Amendments, make the simple public display of a four-letter expletive a criminal offense.").

As pertains to this case, Officer Dial is not entitled to qualified immunity if Plaintiff's right to display his signs was sufficiently clear such that any reasonable official would have understood that what they were doing violated that right. *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (stating a constitutional right is clearly established such that "every reasonable official would have understood that what he is doing violates that right.") (cleaned up). In light of the binding and longstanding precedent discussed above, any reasonable officer in Officer Dial's position should have known that actively preventing Plaintiff from displaying his signs violated Plaintiff's First Amendment rights. Accordingly, Officer Dial is not entitled to dismissal of Plaintiff's First Amendment claim.

(ii) Officer Short

The gist of Plaintiff's allegations against Officer Short is that, at some point during Officer Dial's interaction with Plaintiff, Officer Short moved Plaintiff's camera away from the scene to prevent further filming due to Plaintiff's viewpoint and the content of his messages. Doc. 3 at 8. Plaintiff maintains that Officer Short's "recording interference" prevented him from collecting and publishing newsworthy content. Doc. 3 at 8, 13-15.

The First Amendment prohibits the government "from limiting the stock of information from which members of the public may draw." *Turner v. Lt. Driver*, 848 F.3d 678, 688 (5th Cir. 2017) (quoting *First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765, 783 (1978)). There is both a right to gather news by lawful means and a right to receive such information and ideas. *Id.* (citations omitted). Relevant here, the First Amendment protects film as a medium and the act of filming, as "there is no fixed First Amendment line between the act of creating speech and the speech itself." *Id.* at 688-89 (quoting *ACLU v. Alvarez*, 679 F.3d 583, 596 (7th Cir. 2012)). Moreover, "the filming of . . . police officers performing their responsibilities [in a public place] fits comfortably within basic First Amendment principles," but "may be subject to reasonable time, place, and manner restrictions." *Id.* at 690 (noting that, among other reasons, such filming contributes to the public's ability to hold police accountable and ensures that officers are not abusing their power) (some alterations omitted).

In light of the case law discussed above, it was clearly established at the time of the incidents underlying this suit that Plaintiff had a First Amendment right to record the events at issue as long as he was doing so lawfully. *Id.* 687-89 (further holding that prior to the court's decision issued on February 16, 2017, an individual's First Amendment right to record police was not a clearly established right); *see also Gray v. City of Denham Springs*, No. 19-00889-BAJ-

EWD, 2021 WL 1187076, at *7, 9 (M.D. La. March 29, 2021) (citing *Turner* in denying motion to dismiss plaintiff's claims for First Amendment violation and retaliation stemming from his peaceably filming a traffic stop in December 2018, after which officers grabbed his cell phone, tried to delete the video, tackled him, and pepper sprayed him); *Caldwell v. Medina*, No. 1:19-CV-524-RP, 2020 WL 4043501, at *1, 11 (W.D. Tex. July 17, 2020) (holding that *Turner* was clearly established law on February 9, 2019 when plaintiff filmed police,); *cf. Durant v. Gretna City*, No. CV 19-147, 2020 WL 263669, at *25 (E.D. La. Jan. 17, 2020) (finding no clearly established constitutional violation because plaintiff's videotaping the police while detained and handcuffed in the rear seat of a police vehicle was factually distinguishable from *Turner*). With this precedent, the undersigned finds the law was sufficiently clear at the time of the incident at issue that every reasonable officer would have known that conduct like Officer Short's would violate the First Amendment. *Reichle*, 566 U.S. at 664 (citation omitted). Accordingly, Officer Short is not entitled to dismissal of Plaintiff's First Amendment claim.

   *3. Retaliation*

The First Amendment prohibits not only direct limits on individual speech but also adverse governmental action against the individual in retaliation for exercising that right. *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002). Thus, the First Amendment is violated if an individual is arrested in retaliation for exercising his right to free speech. *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019). "If an official takes adverse action against someone based on that forbidden motive, and 'non-retaliatory grounds are in fact insufficient to provoke the adverse consequences,' the injured person may generally seek relief by bringing a First Amendment claim." *Id.* (quoting *Hartman v. Moore*, 547 U.S. 250, 256 (2006)). To survive a Rule 12(b)(6) motion, Plaintiff's First Amendment retaliation claim must allege: (1) he was engaged in

constitutionally protected activity; (2) Defendants' actions caused him to suffer an injury "that would chill a person of ordinary firmness from continuing to engage in that activity"; and (3) Defendants would not have taken such action but for Plaintiff's exercise of constitutionally-protected activity. *Batyukova v. Doege*, 994 F.3d 717, 720 (5th Cir. 2021) (citing *Alexander v. City of Round Rock*, 854 F.3d 298, 308 (5th Cir. 2017)).

      (i)  Officer Dial

Against this legal framework, it is apparent that Plaintiff's First Amendment retaliation claims withstands Officer Dial's Rule 12(b)(6) challenge. Plaintiff alleges that (1) he was engaging in protected political activity in the form of a peaceful demonstration on public property, Doc. 3 at 9; (2) Officer Dial forcibly took Plaintiff's signs and ultimately arrested him, Doc. 3 at 7-8; (3) Officer Dial's intent was to punish and retaliate against Plaintiff for his speech and viewpoint critical of government misconduct, Doc. 3 at 3-4; Doc. 3 at 30-32; and (4) "[t]he fear of being subjected to police brutality would chill a person of ordinary firmness from engaging in similar protected speech conduct," Doc. 3 at 11-13. That is sufficient to state a First Amendment retaliation claim at this stage of the proceedings. *See Alvarez*, 567 U.S. at 717; *City of Houston v. Hill*, 482 U.S. 451, 463-64 (1987) (stating that "[t]he freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state.").

The law has long established that arresting an individual for publicly displaying vulgarities, like here, violates the First Amendment. *Cohen*, 403 U.S. at 20. Indeed, the Supreme Court recently held that a public school violated the free speech rights of a cheerleader by suspending her from the team after she posted an image on social media with her middle finger raised bearing the caption "[f]uck school fuck softball fuck cheer fuck everything." *Mahanoy*

*Area Sch. Dist. v. B. L. by and through Levy*, 141 S. Ct. 2038, 2043 (2021) (stating that plaintiff "uttered the kind of pure speech to which . . . the First Amendment would provide strong protection."); *see also Eachus v. Steelman*, No. 4:20-CV-00324, 2021 WL 857988, at *14-15 (E.D. Tex. Mar. 8, 2021) (holding that police officer was not entitled to qualified immunity after arresting plaintiff who told him to "get the fuck out of my house" after he unlawfully entered her home and threatened to take her to jail); *Brown v. Wilson*, No. 1:12-CV-1122-DAE, 2015 WL 4164841, at *5 (W.D. Tex. July 9, 2015) (denying qualified immunity to officer who arrested plaintiff for "giving him the middle finger" while driving by). In light of this longstanding precedent, Officer Dial's actions were objectively unreasonable.[5] *Reichle*, 566 U.S. at 664.

(ii) Officer Short

Plaintiff's allegations against Officer Short obtain the same result. Briefly, Plaintiff complains that Officer Short intervened to prevent Plaintiff from filming his peaceful protest and subsequent interaction with Defendants because Plaintiff's speech was critical of the government and he attempted to document police misconduct. Doc. 3 at 13-15. Plaintiff asserts that "[t]he fear of being subjected to police brutality only to have one's deliberate gathered evidence thereof tampered with or destroyed would chill a person of ordinary firmness from engaging in similar protected speech conduct." Doc. 3 at 8, 15.

In analyzing whether a constitutional right was clearly established, a case directly on point is not required, but "existing precedent must have placed the statutory or constitutional question

---

[5] In the First Amendment context, if probable cause for an arrest existed or if a reasonable officer could have believed that it did, the officer cannot be held liable for retaliation. *Keenan*, 290 F.3d at 262. In the present case, however, Plaintiff does not specify in his complaint what he was arrested for. Thus, the undersigned cannot assess probable cause at this stage of the proceedings, and Plaintiff's retaliation claim should not be dismissed.

beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). At least as early as 2016, the Fifth Circuit held that individuals who protest are protected under the First Amendment from retaliatory actions by government officials. *See Allen v. Cisneros*, 815 F.3d 239, 244 (5th Cir. 2016). Moreover, as established *supra*, Plaintiff had a right to record his interaction with Defendants. *See Turner*, 848 F.3d at 688. Accordingly, he had a concomitant right to be free from retaliation for both activities. *Keenan*, 290 F.3d at 258 ("The First Amendment prohibits not only direct limits on individual speech but also adverse governmental action against an individual in retaliation for the exercise of protected speech activities."). Officer Short's motion to dismiss must fail on this count.

    4. *Prior Restraint*

Plaintiff also alleges that Officer Short's conduct amounted to a prior restraint on his speech. Doc. 3 at 37-38. "The term prior restraint 'is used to describe administrative and judicial orders *forbidding* certain communications when issued in advance of the time that such communications are to occur.'" *Machete Productions, L.L.C. v. Page*, 809 F.3d 281, 291-92 (5th Cir. 2015) (quoting *Alexander v. United States*, 509 U.S. 544, 550 (1993) (emphasis in original)). Restraining orders and injunctions that actually forbid speech activities are "classic examples of prior restraints." *Alexander*, 509 U.S. at 550. Officer Short's interference with Plaintiff's ability to record the incidents at hand does not involve such orders and thus does not qualify as a prior restraint. *Machete Productions, L.L.C.*, 809 F.3d at 291-92. Thus, Plaintiff has not sufficiently pled that a constitutional violation of that nature occurred here. *Pearson*, 555 U.S. at 232.

    5. *Right to Redress of Grievances*

Finally, Plaintiff asserts that Officer Short unconstitutionally denied his right to petition the government for redress of his grievances. Doc. 3 at 36, 43-45. The First Amendment

13

guarantees the right of access to all branches of the government for the redress of wrongs. *Cal. Motor Transp. Co. v. Trucking Unlimited,* 404 U.S. 508, 510 (1972). While the right to petition is most commonly thought of in terms of one's resort to the court system, the right also extends to other contexts. *See, e.g.*, *Gates v. City of Dallas*, 729 F.2d 343, 345 (5th Cir. 1984) (holding that resort to police department's citizen complaint process was protected by the "right to petition" clause in the First Amendment). Nevertheless, Plaintiff does not assert that Officer Short deprived him of any particular opportunity, and his ability to file his claims in this Court demonstrates otherwise. Accordingly, Plaintiff has not sufficiently stated a claim that Officer Short violated his right to petition, and this claim should be dismissed. *Pearson*, 555 U.S. at 232.

## IV.   LEAVE TO AMEND

A court may dismiss a claim that fails to meet the pleading requirements, but "it should not do so without granting leave to amend, unless the defect is simply incurable or the plaintiff has failed to plead with particularity after being afforded repeated opportunities to do so." *Hart v. Bayer Corp.*, 199 F.3d 239, 248 n.6 (5th Cir. 2000). Plaintiff has not previously been granted leave to amend and requests to do so. Doc. 24 at 1. Thus, if this recommendation is accepted, Plaintiff should be given the opportunity to file an amended complaint. *See Jacquez v. Procunier*, 801 F.2d 789, 792 (5th Cir. 1986) (holding that dismissing an action after giving the plaintiff only one opportunity to state his case is ordinarily unjustified).

## V.   CONCLUSION

For the foregoing reasons, Defendants' *Motions to Dismiss Original Complaint*, Doc. 10

& Doc. 16, should be **GRANTED IN PART**. Plaintiff's Fourth and Fourteenth Amendment claims against both Defendants, should be **DISMISSED WITH PREJUDICE** as abandoned. Plaintiff's First Amendment prior restraint and right of redress claims should be **DISMISSED WITHOUT PREJUDICE**. However, if Plaintiff fails to cure the deficiencies noted here by an amended complaint filed within 14 days of the acceptance of this recommendation, upon Defendants' re-urging, those claims should likewise be dismissed prejudice.

    **SO RECOMMENDED** on August 25, 2021.

*[signature]*
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). An objection must identify the finding or recommendation to which objection is made, the basis for the objection, and the place in the magistrate judge's report and recommendation the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).